UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| HENDRIX VANCE HOWARD, et ux., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 14-173-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is pending for consideration of Plaintiffs Hendrix Vance Howard and Priscilla Kay Howard's motion to remand. [Record No. 7] The plaintiffs argue that the Court lacks subject matter jurisdiction to hear their claims under the home insurance policy because the parties are not completely diverse. Conversely, the defendants maintain that Defendant George Salyer was fraudulently joined because no colorable claims can be asserted against him. For the reasons outlined below, the motion to remand will be granted.

**I.**

This matter was originally filed on April 11, 2014, in the Montgomery Circuit Court. [Record No. 1-1, p. 3] The Howards are citizens of Kentucky. [Record No. 1, p. 2] Allstate is a corporation organized under the laws of Illinois, with its principal place of business in Illinois. Thus, for diversity purposes, it is a citizen of Illinois. George Salyer, the insurance adjuster employed by Allstate and assigned to the Howards' case, is a citizen of Kentucky. [*Id.*]

The plaintiffs seek damages under a Homeowners Insurance Policy purchased through Allstate. [Record No. 7-1, p. 1] The damages claimed are the result of a March 16, 2013 fire, which destroyed their home. The policy was in effect from August 20, 2012 through August 20, 2013. As of the time of the fire, the Howards had fully performed their obligations under the policy. [Record No. 1-1, pp. 6–7] As a result of the handling of their claim under the policy, the plaintiffs allege breach of contract, misrepresentation, bad faith (under common law, the Unfair Claims Settlement Practices Act in KRS § 304.12-230, and KRS § 304.12-235 governing the prompt payment of claims) and a violation of Kentucky's Consumer Protection Act under KRS § 367.170. [Record No. 1-1, pp. 11–18]

Before the fire, the plaintiffs obtained two mortgages on the house from Whitaker Bank. [Record No. 10, p. 1] The policy provided $280,034.00 for dwelling protection plus an additional twenty percent (20%) extended protection of $56,006.80, for a total policy limit of $336,040.80. [*Id.*, p. 2] It also included a one-year contractual limitations provision prohibiting an insured from bringing an action against Allstate "in any way related to the existence or amount of coverage, or the amount of the loss for which coverage is sought," unless "the action [was] commenced within one year after the inception of the loss or damage." [Record No. 1-2, p. 39]

The Howards reported the fire loss to Allstate. [Record No. 1-1, p. 7] Due to the Howards' poor credit rating, Allstate pursued an investigation into the cause of the fire for approximately five months. While the investigation was pending, Allstate conducted an appraisal of the property and assessed the actual cash value to be $159,500.00. [*Id.*] In a

letter sent on May 1, 2013, Allstate, through George Salyer, advised the Howards of the appraisal and stated that the full replacement cost available to them was $194,200.00. [*Id.*]

In August of 2013, Allstate determined that the fire had not been set intentionally and offered the Howards the actual cost value of their home. [*Id.*] On August 23, 2013, the Howards accepted the actual cash value settlement of $159,500.00 from Allstate. [Record No. 10, p. 5] Pursuant to the terms of the policy, $116,602.27 of the settlement was paid to Whitaker Bank to satisfy the existing mortgages on the property, and the remaining balance of $42,897.73 was provided directly to the Howards. [*Id.*] Later, on August 26, 2013, the Howards received a letter from Salyer stating that the full replacement cost was actually $222,327.00. [Record No. 1-5, p. 1] Finally, on September 3, 2013, Salyer sent the plaintiffs another letter indicating that although the policy limit was $336,040.80, the accepted actual cash value settlement of $159,500.00 would need to be exhausted before any addition funds would be released by Allstate. [Record No. 1-6] The plaintiffs allege that this was the first time they were advised of this consequence. [Record No. 7-1, p. 4] Because the Howards: (i) received only $42,897.73 after payment of their mortgages to Whitaker Bank; and (ii) were unable to come up with other funds, their house has not been rebuilt. [*Id.*]

The defendants removed the action to this Court on May 1, 2014. [Record No. 1] Although they acknowledge that the Howards' and Salyer's status as Kentucky citizens would normally destroy diversity, the defendants argue that Salyer's citizenship may be disregarded because he has been fraudulently joined in an effort to defeat diversity. [*Id.*, 2–3] The plaintiffs filed a motion to remand on May 31, 2014. [Record No. 7]

## II.

A case filed in state court is removable only if it could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending."); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005) ("[Section] 1441 . . . authorizes removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in federal district court."). Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs.[1] 28 U.S.C. § 1332(a). The "statute has been interpreted to demand complete diversity, that is, that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). The burden of establishing diversity jurisdiction is on the removing party. *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

An exception to the complete-diversity requirement arises where a non-diverse defendant has been fraudulently joined. *See id.* ("[The Sixth Circuit] has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."). A case need not be remanded as the result of fraudulent joinder if there is no "reasonable basis" to expect that the plaintiff's claims against the non-diverse defendant could succeed

---

1   The defendants adequately allege that the amount-in-controversy is satisfied in this case. [Record No. 1, pp. 11–13]

under state law. *Id.* (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994)). Although the actual motive of the plaintiff is irrelevant to the fraudulent joinder inquiry, *Jerome-Duncan, Inc. v. Auto-By-Tel Mktg. Corp.*, 176 F.3d 904, 907 (6th Cir. 1999), this test serves as "a proxy for establishing the plaintiff's fraudulent intent. If the plaintiff has no hope of recovering against the non-diverse defendant, the court infers that the only possible reason for the plaintiff's claim against [that defendant] was to defeat diversity and prevent removal." *Smith v. SmithKline Beecham Corp.*, No. 11-56-ART, 2011 WL 2731262, at *5 (E.D. Ky. July 13, 2011) (citation and internal quotation marks omitted).

In cases of fraudulent joinder, the Court "must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the nonremoving party," and "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493 (internal quotation marks omitted). If a determination cannot be made from the face of the complaint, the Court may "pierce[] the pleadings to consider summary-judgment-type evidence." *Walker v. Phillip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th. Cir. 2011) (internal quotation marks omitted). However, the Court must be careful not to "step[] from the threshold jurisdictional issue [of fraudulent joinder] into a decision on the merits." *Boyer v. Snal-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 2011). The removing party bears the "heavy" burden of establishing fraudulent joinder. *Walker*, 443 F. App'x at 953; *Alexander*, 13 F.3d at 949.

The defendants assert two grounds in support of a finding of fraudulent joinder in this case: (i) the claims against Salyer are barred by the one-year limitation provision in the

policy and (ii) the claims against Salyer are not colorable under Kentucky law. [Record No. 1, pp. 3–4]

### III.

**1. Contractual Limitations Provision**

The parties dispute whether the claims against Salyer are barred by the policy's one-year contractual limitations provision. The four claims asserted against Salyer are: (i) breach of contract; (ii) bad faith; (iii) misrepresentation; and (iv) violation of Kentucky's Consumer Protection Act. The policy provides a one-year limitation provision for actions "in any way related to the existence or amount of coverage, or the amount of the loss for which coverage is sought." [Record No. 1-2, p. 39] There is no dispute that the state court action was brought more than one year following the damage to the property.[2]

The defendants contend that the contractual limitations period began to run on the date of the fire (March 6, 2013), and that all claims brought against Salyer are barred by the one-year limitations provision in the policy. [Record No. 1, pp. 3–4] They allege that contractual limitation provisions are enforceable under Kentucky law and, therefore, all claims against Salyer are procedurally barred and could not have been properly asserted against him. [*Id.*] The plaintiffs allege that, pursuant to KRS § 304.14-370, the limitations period for the claims brought against Salyer for bad faith and misrepresentation did not begin to run until the bad faith and misrepresentation actually occurred (at the earliest, May 1, 2013). [Record No. 12, pp. 11–13] That day, Salyer sent the Howards a letter advising them

---

2   The fire occurred on March 16, 2013, and the current action was brought in Montgomery Circuit Court on April 11, 2014. [Record No. 7-1, pp. 1–2]

that the investigation was ongoing and that no settlement offer could be made at the time. [*Id.*, pp. 12–13] Thus, the plaintiffs argue that the April 11, 2014 state court action, was filed within the one-year limitations provision.[3] [*Id.*]

### A. The Effect of KRS § 304.14-370 on Contractual Limitations Provisions

Kentucky law generally allows for contractual provisions which limit the time within which an insured may sue. *Edmondson v. Pa. Nat'l Mut. Cas. Ins. Co.*, 781 S.W.2d 753, 756 (Ky. 1989). Such provisions are typically enforced unless they unreasonably limit the time in which a party may bring suit. KRS § 304.14-370 specifically allows foreign insurers[4] to limit the time in which an action can be brought against them. However, it places additional boundaries on a foreign insurer's ability to contractually limit the time in which a party can file suit:

> No conditions, stipulations, or agreements in a contract of insurance shall deprive the courts of this state of jurisdiction of actions against foreign insurers, *or limit the time for commencing actions against such insurers to a period of less than one (1) year from the time when the cause of action accrues*.

KRS § 304.14-370 (emphasis added).

Contractual limitations provisions generally set the date of loss as the beginning of the limitations period provided under the contract. However, "the date of loss is not

---

3    In the alternative, the Howards contend that that the one-year limitations provision conflicts with KRS § 413.090, which allows for a fifteen-year statute of limitations upon written contracts. [Record No. 7-1, p.10] As a result, they allege that the Kentucky statute must be followed pursuant to a Conformity To State Statutes provision in the policy. [*Id.*] Further, the Howards assert that their claims for misrepresentation, bad faith, and violation of Kentucky's Consumer Protection Act, are not covered by the one-year limitations provision in the policy because they are not related to the existence or amount of coverage, or the amount of the loss for which coverage is sought. [*Id.*, p. 11]

4    A "foreign" insurer is an insurer formed under the laws of a state other than Kentucky. *See* KRS § 304.1-070. It is undisputed that Allstate is a foreign insurer within the meaning of the statute.

synonymous with the date of accrual." *Price v. AgriLogic Ins. Servs., LLC*, No. 14-14-DLB-CJS, 2014 WL 3894341, at *5 (E.D. Ky. Aug. 7, 2014). A claim cannot accrue prior to the last event necessary to create the cause of action occurring. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 591 (6th Cir. 2004) ("Legal rights and obligations vest when the last event necessary to create the cause of action occurs."). Thus, a limitations period under KRS § 304.14-370, must provide a party one year to bring suit from the accrual date of the action, which may vary between claims brought in a single suit.

Kentucky courts have been hesitant to confront the issue of accrual under KRS § 304.14-370 and have instead opted to focus on whether it conflicts with other statutes of limitations under Kentucky law.[5] *See Elkins v. Ky. Farm Bureau Mut. Ins. Co.*, 844 S.W.2d 423, 425 (Ky. Ct. App. 1992) (finding that a contractual limitations period was unreasonable because it conflicted with the two-year limitations period in the Motor Vehicle Reparations Act); *Webb v. Ky. Farm Bureau Ins. Co.*, 577 S.W.2d 17 (Ky. Ct. App. 1978) (holding that a one-year contractual limitations period was not in conflict with any Kentucky statute including the 15-year statute of limitations applicable to action on a contract). However, federal courts have evaluated contractual limitations provisions under KRS § 304.14-370. In *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 404–07 (6th Cir. 2005), the Sixth Circuit found that a contractual limitations provision was sufficient under KRS § 304.14-370, in relation to a

---

5   A recent decision from the Court of Appeals of Kentucky addressed this issue. It stated that "[w]e have found no persuasive Kentucky authority suggesting that, for the purpose of KRS § 301.14-370, a cause of action could 'accrue' by agreement before it ripened under the law. It would fundamentally distort the common law definition of 'accrues' and the legislative intent behind KRS § 301.14-370 . . . ." *See Hensley v. State Farm Mut. Auto. Ins. Co.*, No. 2013-CA-006-MR, 2014 WL 3973115, *11 (Ky. Ct. App. Aug. 15, 2014).

breach of contract claim, where it required a party to sue "within one year after the inception of loss." Conversely, in *Tennant v. Allstate Ins. Co.*, No. Civ.A. 04-54, 2006 WL 319046 (E.D. Ky. Feb. 10, 2006), the district court found that the date of accrual for a claim of bad faith under an insurance policy did not accrue under KRS § 304.14-370 until the denial of the plaintiff's claim for coverage, which was after the date of loss.

### B. Bad Faith Claim

The plaintiffs contend that their bad faith claim is not barred by the one-year contractual limitations period. They allege that the first act constituting bad faith was the May 1, 2013 letter, in which Salyer advised the Howards that the investigation into the origin of the fire was still ongoing and that an offer could not be made at the time. [*Id.*, p. 13] As a result, under KRS § 304.14-370, the plaintiffs claim that the very earliest the action could have accrued was May 1, 2013, less than a year before the action was brought on April 11, 2014. The defendants assert that one-year limitations periods in insurance policies are allowed under Kentucky law and that accrual under KRS § 304.14-370 occurred at the time of the date of loss for all of the plaintiffs' alleged claims. *See Barjuca v. State Farm Fire & Cas. Co.*, No. 5:11-cv-380-JMH-REW, 2013 WL 6631999, *5 (E.D. Ky. Dec. 17, 2013); *Smith*, 403 F.3d 401; *Webb*, 577 S.W.2d 17.

The defendants cite case law that relies upon the Sixth Circuit's reasoning in *Smith* regarding breach of contract claims under KRS § 304.14-370. However, "*Smith* never explicitly states that the parties may contractually modify a cause of action's accrual date"

and it is "silent as to whether [its holding] applies in the bad faith context."[6] *Price*, 2014 WL 3894341, at *12. In *Tennant*, the court considered the validity of the same limitations provision at issue in *Smith*, but in relation to a claim of bad faith. 2006 WL 319046. There, the court found that, "because a cause of action accrues when the last event necessary to create the cause of action occurs, a bad faith cause of action in which the allegation is that the insurance company *wrongfully denied* an insured's claim cannot accrue until denial of the claim." *Id.* at *2. The court found that the bad faith claim was not barred by the contractual limitations provision and concluded that "the one year limitation provision in the insurance policy [was] inconsistent with KRS § 304.14-370." *Id.*

Here, the bad faith claim does not rest upon a denial of an insurance claim, as in *Tenant*, but instead upon Salyer's alleged failure to timely resolve their claim and to provide them with their options under the policy. However, the Court finds the reasoning in *Tenant* to be persuasive in this case. Because no action for bad faith could have accrued prior to the last event necessary to create the cause of action occurring, the earliest time at which accrual could have happened was the May 1, 2013 letter. The policy required the Howards to bring suit by March 16, 2014, effectively giving them ten months to bring suit. This does not satisfy the requirements of KRS § 304.14-370. Under these circumstances, the defendants have not proven that the Howards' bad faith claim would be barred by the one-year

---

6    Judgment was awarded to the defendant in *Smith* where the plaintiffs alleged that the denial of the insurance claims was in bad faith. However, the basis of the *Smith* ruling is not controlling in this case as it found that its "conclusion that the contractual limitations provisions was valid and enforceable . . . [was] dispositive of the Smiths' claim that invocation of the provision constituted bad faith on the part of Allstate," which the plaintiffs conceded at oral argument. 403 F.3d at 407. Here, the bad faith claim is not based upon the invocation of the contractual provision, but upon the actions of Salyer during the settlement of the claim.

limitations provision. As a result, the defendants have not satisfied their high burden to demonstrate fraudulent joinder under their contractual limitations theory.

   **2. No Colorable Claim for Bad Faith**

The plaintiffs allege bad faith under common law, the Unfair Claims Settlement Practices Act ("UCSPA") located in KRS § 304.12-230, and KRS § 304.12-235. The UCSPA makes it "an unfair claims settlement practice for any person to commit or perform" one of fifteen specific acts or omissions. KRS § 304.12-230. The plaintiffs allege violations of four of the acts or omissions: specifically, (i) "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" under KRS § 304.12-230(1); (ii) "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" under KRS § 304.12-230(3); (iii) "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" under KRS § 304.12-230(6); and (iv) "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement" under KRS § 304.12-230(14). The issue here is whether an insurance adjuster is potentially subject to liability for bad faith claims.

The defendants rely on the Kentucky Supreme Court's decision in *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000). The *Davidson* court found that self-insured or uninsured persons and entities are not subject to the UCSPA or common law bad faith claims, because both "apply only to persons or entities engaged in the business of insurance." *Id.* at 95–96. Further, the Kentucky Supreme Court stated that "[a]bsent a contractual

limitations provision. As a result, the defendants have not satisfied their high burden to demonstrate fraudulent joinder under their contractual limitations theory.

   **2. No Colorable Claim for Bad Faith**

The plaintiffs allege bad faith under common law, the Unfair Claims Settlement Practices Act ("UCSPA") located in KRS § 304.12-230, and KRS § 304.12-235. The UCSPA makes it "an unfair claims settlement practice for any person to commit or perform" one of fifteen specific acts or omissions. KRS § 304.12-230. The plaintiffs allege violations of four of the acts or omissions: specifically, (i) "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" under KRS § 304.12-230(1); (ii) "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" under KRS § 304.12-230(3); (iii) "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" under KRS § 304.12-230(6); and (iv) "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement" under KRS § 304.12-230(14). The issue here is whether an insurance adjuster is potentially subject to liability for bad faith claims.

The defendants rely on the Kentucky Supreme Court's decision in *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000). The *Davidson* court found that self-insured or uninsured persons and entities are not subject to the UCSPA or common law bad faith claims, because both "apply only to persons or entities engaged in the business of insurance." *Id.* at 95–96. Further, the Kentucky Supreme Court stated that "[a]bsent a contractual

limitations provision. As a result, the defendants have not satisfied their high burden to demonstrate fraudulent joinder under their contractual limitations theory.

   **2. No Colorable Claim for Bad Faith**

The plaintiffs allege bad faith under common law, the Unfair Claims Settlement Practices Act ("UCSPA") located in KRS § 304.12-230, and KRS § 304.12-235. The UCSPA makes it "an unfair claims settlement practice for any person to commit or perform" one of fifteen specific acts or omissions. KRS § 304.12-230. The plaintiffs allege violations of four of the acts or omissions: specifically, (i) "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" under KRS § 304.12-230(1); (ii) "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" under KRS § 304.12-230(3); (iii) "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" under KRS § 304.12-230(6); and (iv) "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement" under KRS § 304.12-230(14). The issue here is whether an insurance adjuster is potentially subject to liability for bad faith claims.

The defendants rely on the Kentucky Supreme Court's decision in *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000). The *Davidson* court found that self-insured or uninsured persons and entities are not subject to the UCSPA or common law bad faith claims, because both "apply only to persons or entities engaged in the business of insurance." *Id.* at 95–96. Further, the Kentucky Supreme Court stated that "[a]bsent a contractual

obligation, there is simply no bad faith cause of action, either at common law or by statute." *Id.* at 100.

However, the *Davidson* opinion is not clear regarding whether an insurance adjuster qualifies as being "engaged in the business of insurance." The court noted in the opinion that "[n]othing in any of these statutes evidences a legislative intent that the Kentucky Insurance Code was designed to regulate persons who are neither insured nor engaged in the business of entering into contracts of insurance." *Id.* at 98. Under this language, it does not seem that an insurance adjuster could be subject to liability because they do not enter into insurance contracts. On the other hand, the court also stated that the "comprehensive [Kentucky insurance] regulatory scheme applies only to insurance companies *and their agents* in the negotiation, settlement and payment of claims made against policies, certificates or contracts of insurance." *Id.* (emphasis added). Insurance adjusters are involved in negotiations, settlements, and payments of claims on behalf of their employers, arguably placing them into the business of insurance, and thus, making them liable for bad faith claims. Further, the *Davidson* court stated that "the UCSPA and the tort of 'bad faith' apply only to those persons or entities (and their agents) who are 'engaged . . . in the business of entering into contracts of insurance.'" *Id.* at 102. This statement is also open to interpretation. *Montgomery v. L & M Trucking & Equip. Co.*, No. 09-46-GFVT, 2010 U.S. Dist. LEXIS 144086, *7–8 (E.D. Ky. Mar. 30, 2010).

These ambiguities have been presented to this court on multiple occasions and have resulted in different outcomes. *See Mattingly v. Chartis Claims, Inc.*, No. 2011-48-WOB-CJC, 2011 WL 4402428, *2 (E.D. Ky. Sep. 20, 2011); *Montgomery*, 2010 U.S. Dist. LEXIS

144086, at *8; *see also N. Am. Specialty Ins. Co. v. Pucek*, No. 5:09-cv-49-JMH, 2009 WL 3711261, *3 (E.D. Ky. Nov. 4, 2009) (noting that courts have resolved this issue on both sides of the debate); *Gibson v. Am. Mining Ins. Co.*, No. 08-118-ART, 2008 WL 4602747, **7–9 (E.D. Ky. Oct. 16, 2008). As a result, the court in *Pucek* found that "ambiguity in Kentucky's bad faith law" must be resolved in favor of the non-removing party, concluding that while the claim "may not ultimately prove successful, it is at least colorable." 2009 WL 3711261, at *3. The court in *Gibson* noted that although no Kentucky appellate court had addressed this issue, at least one Kentucky circuit court had indicated that bad faith claims against insurance adjusters are "viable." 2008 WL 4602747, at *8 & n.13. Further, the court in *Montgomery* cited to a 2009 Pulaski Circuit Court case which refused to dismiss a bad faith claim against a claims adjuster, in the context of a motor vehicle accident, noting the ambiguity in *Davidson*. 2010 U.S. Dist. LEXIS 144086, at *8–9.

The ambiguity in Kentucky law regarding bad faith claims against insurance adjusters will be resolved in favor of the Howards, as the non-removing party. *Coyne*, 183 F.3d at 493. This court cannot say that there is "no possibility" under the facts alleged in this case that the plaintiffs could not recover against Salyer. The defendants cannot meet their heavy burden to demonstrate fraudulent joinder.

Because the defendants have failed to carry their burden to establish fraudulent joinder in relation to the plaintiffs' bad faith claim, consideration of the remaining claims against Salyer is not required.

**IV.**

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1. The plaintiffs' motion to remand [Record No. 7] is **GRANTED**.

2. The defendants' motion to dismiss [Record No. 11] is **DENIED** as moot.

3. This action is **REMANDED** to the Montgomery Circuit Court and **STRICKEN** from the Court's docket.

This 5th day of November, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge